LUCY BALEMIAN *vs.* YEGHIA ADEIAN, *Ex'r et al.*

AUGUST 1, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.  This is a petition for permission to file out of time an appeal from a probate decree allowing the will of Oscar Barsoian, late of the city of Pawtucket, deceased. The relief is sought under general laws 1938, chapter 535, §6, on the ground that petitioner's failure to take, within the statutory period, an appeal from such decree of the probate court was caused by accident, mistake or unforeseen cause.

It appears without dispute that Oscar Barsoian, the testator, was married twice and had children of both marriages. By his first wife, who is deceased, he had a daughter Lucy Balemian, who is the present petitioner, and also a son who died during World War II.  By his second wife Lausean, who before her marriage was a widow with one child and who is a respondent, he had two other children.  The testator died November 24, 1950 and his will was not filed for probate until January 30, 1951.  Thereafter the petition for probate, which apparently listed the names and addresses of all the heirs including petitioner, was duly advertised in accordance with the law then in effect and was heard on February 28, 1951 when a decree allowing said will was entered by the probate court of the city of Pawtucket.

The petitioner did not file an appeal within the statutory period but now seeks relief substantially on the basis of six facts, all of which are stated in the petition as happening at some time prior to testator's death.  These allegations are generally: (1) that Lausean Barsoian, the testator's second wife, represented to petitioner that he had no money or assets and that a mortgage on the house was in danger of being foreclosed; (2) that said wife had tried to

"cheat" petitioner and her husband by having them pay $450 and take over the testator's life insurance policy which "was worthless"; (3) that the testator's wife had also displayed hostility to petitioner and her husband when they visited the testator and had made it impossible for them to talk with the testator without her being present; (4) that the wife at no time disclosed the existence of testator's will to them before the statutory period for appeal had expired; (5) that the first knowledge petitioner had of testator's possession of any assets or the existence of his will was in April 1951, when she received a communication from the attorney for the executor requesting her to sign a receipt and release upon payment to her of the $1,000 legacy under the will, and also requesting her to sign a quitclaim deed of her interest in the house, all of which happened after the statutory appeal period had expired; and (6) that in the light of after-acquired knowledge it is now claimed that the widow, through fear that the will would be upset because of her undue influence or because of the testator's incapacity, had concealed the will, had misrepresented the facts concerning the testator's assets, and had deceived petitioner into believing that her father had died without any assets and without leaving a will. In support thereof the petitioner and her husband Sahag Balemian have filed separate affidavits setting forth in substance and general terms the above summarized facts.

On the other hand the executor, who is the child of Lausean Barsoian by her first marriage, is contesting the petition and in addition to his own affidavit he has filed one by each of the following: the testator's wife, his two children by the second marriage, his doctor, and his lawyer. These affidavits set forth many facts which either contradict or reasonably explain the allegations relied upon by petitioner. Indeed in certain material particulars they are of such a nature as to submit to verification and to have called for a reply by petitioner, if the stated facts were not correct. However, no affidavit or specific contradiction has

been made by the petitioner, her husband, or anybody else.

For example, the widow in substance and effect categorically denied any misrepresentation concerning the will, the testator's assets, the mortgage foreclosure, and the insurance policy as stated in petitioner's affidavit. She points out that petitioner's allegation concerning the alleged misrepresentations about the testator's assets and about the danger of a foreclosure of the mortgage on the house are not fixed as to time but are merely stated as happening at "Some time prior" to the testator's death; that as a matter of fact they were made some fifteen years previously at a time during the great depression of the 1930's; that such representations were true at that time, as the testator's bank account was down to $1 and there was a threatened foreclosure of the mortgage on the house, which was owned from the beginning by her and the testator as tenants in common; and that they were then desperately in need of cash to prevent the loss of the house.

She further explains that the proposed sale of the life insurance policy was made at the same time in order to raise money to prevent the foreclosure; that the offer was made by the testator himself and not by her; that the policy was entrusted to petitioner and her husband so that they might investigate its status and value; that they were unable or unwilling at the time to take it over; and further that the policy was not valueless, as petitioner alleged, but that after she and her husband had refused the testator's offer the insurance company granted a loan upon said policy to the extent of $200.

The widow further categorically denies any hostility to the children of testator's first marriage or to the petitioner's husband. On the contrary she asserted that she actually reared petitioner's brother for at least thirteen and one-half years from the time of her marriage to the testator; that petitioner and her husband were always welcome and had visited her home on many occasions; that contrary to their statements she never prevented petitioner from talking

to the testator alone; and that they had many opportunities to be with him even on their more recent visits, because the testator was not confined to his bed and they were left with him frequently when she, the wife, had to go out to the store or for other purposes.

She admitted that she had not expressly disclosed the existence of a will during the testator's life but explained that she was acting under instructions of the testator not to tell *any* of the children about it lest differences develop between the families. Moreover it is expressly admitted by petitioner and her husband that neither of them ever asked her or the testator during his life whether there was a will in existence; that she never stated to either of them that there was no will; and that they made no inquiry at the probate court or elsewhere.

Furthermore she asserted that it was a custom of her race to have a family reunion a month from the death of a parent and a similar gathering the following Christmas; that these reunions were held and the petitioner and her husband were expected to attend; that because she was greatly upset at the time of the funeral by both the testator's death and the critical illness of her son in the hospital, she did not talk to anybody about the will; that she expected to see petitioner at such reunions and to tell her then of the contents of the will; and that petitioner and her husband, though intending to come, at the last minute explained they were unable to attend such reunions solely for reasons connected with their family in New York. She further asserted that because of all these unusual conditions she had not instructed the attorney to institute probate proceedings until January 30, 1951; that thereafter she left the matter in his hands; and that she supposed he would do what was necessary under the law.

It is further pointed out in her affidavit and that of the family physician that everything had been done for the health of the testator; that he had the capacity to make a will; and that there was no question of undue influence.

The will itself shows that the testator divided his estate by bequeathing to petitioner a legacy of $1,000 to be derived from a mortgage to be placed on the house and by giving to the children of his second marriage his undivided one-half interest in that house, and to his wife the remainder of his estate, real and personal.

The petitioner in a proceeding of this type has the burden of showing sufficient facts to constitute accident, mistake or unforeseen cause, which will warrant a conclusion that justice requires a trial of the case on its merits, and each case must be determined on its own facts. *Podrat* v. *Frank,* 76 R. I. 19, 23. The burden is not satisfied by a showing of facts which indicate strongly that a petitioner has slumbered on his rights or was negligent in failing to take advantage of reasonably available facts which would lead to notice and require the filing of an appeal within the statutory period. See *MacNeil* v. *Morgan,* 73 R. I. 165, 169.

An examination of the petition and affidavits filed in the instant case satisfies us that petitioner has not established facts to bring her case within the terms of the statute and to satisfy the above-mentioned burden. Her petition and affidavits are largely expressed in general terms. Chiefly the representations relied upon are stated as made by the wife at "Some time prior" to the testator's death, without further definition. The affidavits for the respondents, however, are definite and detailed. They showed reasonably, in the absence of any counter affidavit contradicting the explicit statements therein, that the representations relied on were made some fifteen years ago during the 1930 depression and that they were actually true as of that time. These assertions are not unreasonable, inherently improbable or inconsistent and they are not otherwise contradicted.

It is admitted that neither petitioner nor her husband ever asked the testator or his wife concerning the existence of a will and that she never stated to them that there was no will. Admittedly no investigation whatever was made by the petitioner from the testator or from the records, or

from anybody as to the will, assets or estate, notwithstanding that the petitioner was informed at all times of the death of the testator, attended his funeral, and suspected the wife's alleged hostility. The petitioner does not deny that she was expected at the family reunions, when the details of the will are customarily made known and could have been ascertained in time to appeal. Her failure to attend was not caused by testator's wife nor the result of any cause now alleged.

In our judgment the uncontradicted statements and explanations in the affidavits for the respondents clearly show that the petitioner has not made out such a case of accident, mistake, unforeseen cause or fraud under this statute that requires the granting of her petition. On the contrary her failure to file an appeal within the statutory period appears to be the result of her own indifference or neglect.

The prayer of the petition is denied.

*Edwin O. Halpert, Bernard R. Pollock,* for petitioner.

*Crowe & Hetherington, Bernard C. Chester,* for respondents.